UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ATLANTIC FORWARDING, LTD,

                                         Plaintiff,          13-CV-00209 (JPO)(SN)

           -against-                          REPORT AND
                                                                          RECOMMENDATION

MSL INTERNATIONAL, LLC,

                                         Defendant.

-----------------------------------------------------------------X
**SARAH NETBURN, United States Magistrate Judge.**
**TO THE HONORABLE J. PAUL OETKEN:**

       On April 4, 2013, the Honorable J. Paul Oetken referred this matter to my docket for an inquest on damages following an entry of default judgment against defendant MSL International, LLC ("MSL"). Plaintiff Atlantic Forwarding, Ltd. ("Atlantic") submitted Proposed Findings of Fact and Conclusions of Law in support of damages on May 16, 2013, to which MSL failed to respond. Because Atlantic has provided the Court with a sufficient basis on which to award damages, the Court recommends an award of $164,692.70 plus pre-judgment and post-judgment interest.

## BACKGROUND

       Between September and November 2011, a non-party cargo company, Young Sea Cargo Corp ("Young Sea"), contracted with defendant MSL, a shipping company, for the shipment of goods to two ports in Vietnam. (Compl. ¶ 6, 7.) Plaintiff Atlantic, a corporation headquartered in Switzerland with a branch in Hanoi, acted as the delivery agent, the entity responsible for handling shipments at ports of entry. (Id. ¶ 8.)

Young Sea issued four bills of lading concerning this shipment, dated September 14, 2011, October 5, 2011, October 19, 2011, and November 9, 2011. (Compl. at Ex. 2.) Each designated Atlantic as the delivery agent and MSL as the shipper. (Id. ¶ 6, 8; Compl. at Ex. 2.) The conditions in the bills of lading identified Young Sea as the "Carrier," and specified that it is a non-vessel operating common carrier ("NVOCC") as provided by the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701. (Compl. at Ex. 1.) That is, Young Sea "neither owns nor charters vessels, as a result of which the Carrier will be required to contract with one or more Participating Carriers to accomplish the Carriage contemplated by this Bill of Lading." (Id.) In this case, non-party CMA CGM, a French container shipping group, was retained as the Participating Carrier and supplied the vessel. (Plaintiff's Proposed Findings of Fact and Conclusions of Law (hereinafter "Pl. Aff.") ¶ 9.)

MSL made some of the freight payments pursuant to the agreement between itself and Young Sea, however, it failed to make payment on all the outstanding invoices. (Compl. ¶ 9.) On July 24, 2012, Young Sea assigned any and all rights to the money owned to it by MSL to Atlantic. (Id. ¶ 10; Ex. 1.)

Atlantic alleges that MSL failed to make payments on the outstanding invoices owed to Atlantic pursuant to the original agreement between MSL and Young Sea. (Id. ¶ 11.) Thus, Atlantic alleges that MSL is in breach of contract with Atlantic, the assignee. (Id. ¶ 12.) Because the agreement provided that the shipper is responsible for paying all charges associated with the carriage of goods, Atlantic alleges that MSL is also responsible for various consequential damages. (Id. ¶ 13-14.) Atlantic explains that the cargo had to be destroyed "because MSL abandoned it." (Pergher Decl. ¶ 4.) As a result, Atlantic incurred expenses for removal, storage,

and destruction of the cargo, which was performed by CMA CGM. (Pl. Aff. ¶ 17; see also Pergher Decl. at Ex. B.)

MSL acknowledged its debt to Atlantic in an email correspondence between the parties and agreed to a payment schedule. (Pergher Decl. at Ex. C.) Despite this agreement, Atlantic represents that no payments have been made by MSL to Atlantic. (Compl. ¶ 11; Pl. Aff. ¶ 3, 10; Pergher Decl. ¶ 8.)

On January 9, 2013, Atlantic filed a breach of contract claim against MSL for damages, attorneys' fees and costs, and pre-judgment and post-judgment interest. Atlantic served MSL with the complaint on January 24, 2013, and filed proof of service on January 29, 2013. When MSL failed to respond, Atlantic requested an entry of default against MSL pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Local Civil Rule 55.1 for failure to plead or otherwise defend the action. On April 2, 2013, Judge Oetken found that Atlantic was entitled to a default judgment against MSL and referred the matter to my docket for an inquest on damages.

On April 2, 2013, I directed Atlantic to make submissions supporting its request for a final judgment against MSL. The Order notified both parties that, absent a request from either side that the Court hold a hearing, the Court would conduct its inquest regarding damages based solely upon the parties' written submissions.

In response, Atlantic submitted Proposed Findings of Fact and Conclusions of Law seeking to recover a total amount of $172,145.10. In support of its application for damages, Atlantic submitted the bills of lading, invoices for the shipment, email correspondence between representatives from Atlantic and CMA CGM, email correspondence between Atlantic and MSL, records of attorneys' fees and costs, and affidavits from Reto Pergher, the Trade Director for

Import Asia (Worldwide) of Atlantic, Timothy J. Nast, an attorney with Tisdale Law Offices, Atlantic's counsel, and Dawn C. Kubie, a paralegal with Atlantic's counsel.

The Court granted MSL until June 17, 2013 to respond but it did not. Neither party has requested a hearing on the issue of damages.

## DISCUSSION

**I.       Liability of MSL**

This case is governed by the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 et seq., which covers bills of lading for the carriage of goods to or from ports of the United States. A "bill of lading" is the primary contractual document between the shipper and the carrier. Sea-Land Service, Inc. v. Amstar Corp., 690 F. Supp. 246, 249 (S.D.N.Y. 1988). A bill of lading is issued by a NVOCC, which acts as an intermediary between shippers and carriers. 46 U.S.C. § 40102(16). An NVOCC then arranges the shipment of goods with a carrier who owns the ship. Scholastic, Inc. v. M/V KITANO, 362 F. Supp. 2d 449, 455 (S.D.N.Y. 2005) (explaining the roles of NVOCCs as intermediaries). The bill of lading "serve[s] as a receipt, a document of title, a contract for the carriage of goods, or all of the above," and is interpreted according to the "ordinary principles of maritime contract law." Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 823 (2d Cir. 2006). "It is from the bill of lading – the NVOCC's contract with the shipper – that its liability to the shipper for its cargo derives." Id. at 455-56 (citation omitted).

Following an entry of default judgment, all well-pleaded factual allegations of the complaint, except those relating to damages, are accepted as true. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.

1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir.), rev'd on other grounds, 409 U.S. 363 (1973). Courts evaluating damages first look to the complaint to determine whether the plaintiff has established a prima facie case for recovery.

In its complaint, Atlantic pleaded sufficient facts to establish a *prima facie* case of breach of contract under the COGSA. Young Sea, an NVOCC, issued four bills of lading to MSL representing four shipments. (Compl. at Ex. 2.) Young Sea's assignment of its rights on the bills of lading to Atlantic on July 24, 2012 established privity of contract between MSL and Atlantic. (Id. at Ex. 1.) See Restatement (Second) of Contracts § 317 (1981) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance."). Atlantic has asserted that MSL failed to fulfill its responsibilities under these contracts, and MSL has not asserted affirmative defenses or evidence regarding damages. Thus, Atlantic's allegations in the complaint are accepted as true, and the terms of the bill of lading will determine the nature of the damages owed to Atlantic by MSL.

**II.     Damages Owed to Atlantic**

Where liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks. Transatlantic Marine, 109 F.3d at 111; Greyhound Exhibitgroup, 973 F.2d at 158 ("While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages."). The plaintiff bears the burden of establishing a basis for the damages, and must introduce sufficient evidence to establish the amount of damages with reasonable certainty. Transatlantic Marine, 109 F.3d at 111. See also Lenard v. Design Studio, 889 F. Supp. 2d 518, 538 (S.D.N.Y. 2012) (awarding no damages because plaintiff failed to demonstrate the amount

of fines incurred that were attributable to defendant); Griffiths v. Francillon, 10 Civ. 3101 (JFB)(GRB), 2012 WL 1341077, at *2 (E.D.N.Y. Jan. 30, 2012) (recommending that no damages be awarded because motion papers alone were insufficient to support an award of damages); Restatement (Second) of Contracts § 352 (1981) ("A party cannot recover damages for breach of a contract for loss beyond the amount that the evidence permits to be established with reasonable certainty.").

A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Transatlantic Marine, 109 F.3d at 111 (finding that a district court's should not just accept the plaintiff's statement of damages; rather, it should determine whether the damages are based on appropriate evidence). Under Rule 55 of the Federal Rules of Civil Procedure, a court may, at its discretion, conduct a hearing to determine damages. Fed. R. Civ. P. 55(b)(2) (leaving the decision of whether a hearing is necessary for determining damages to the discretion of the district court). But it is "not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). Sufficient evidence may include affidavits and documentary evidence. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).

Atlantic asserts that, under the terms of the bills of lading and basic contract law, MSL is liable for the initial freight charges, demurrage, storage, and destruction costs. In addition, Atlantic seeks attorneys' fees and costs.

The terms of the bills of lading exchanged between Young Sea and MSL show that MSL, the shipper, is "responsible for . . . paying: (a) all Charges levied and incurred in relation to the Carriage of Goods; and (b) all duties, taxes, and penalties incurred or sultered by reason of the

Carriage or any illegal or incorrect actions related to the Carriage." (Compl. at Ex. 2.) Under "Definitions," the bills of lading provide that "Charges" includes freight charges, demurrage charges, "all fees and expenses payable by the Shipper in accordance with the Bill of Lading . . . and all fees and expenses incurred by Carrier in connection with this Bill of Lading, including attorney's fees and expenses incurred in collecting amounts due from shipper." (Id.) The terms further provide that, because Young Sea does not own or charter vessels, it would contract with a "Participating Carrier," here CMA CGM, to execute the shipment. The expenses from this arrangement would be included in the charges associated with the Carriage of Goods. (Id.)

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may reasonably be considered either arising naturally . . . from such breach . . . or such as may reasonably be supposed to have been in the contemplation of both parties . . . as the probable result of the breach." Hadley v. Baxendale, 9 Exch. 341 (1854). This rule applies with equal force when determining damages for breaches of shipping contracts. See, e.g., Sunpride (Cape)(PTY) Ltd. v. Mediterranean Shipping Corp., 01 Civ. 3493 (CSH), 2003 WL 22682268, at *35 (S.D.N.Y. Nov. 12, 2003) (citing Hadley); accord Compania Sud Americana de Vapores S.A. v. Global Terminal & Container Servs., Inc., 509 F. App'x 97, 99 (2d Cir. 2013) (approving damages as "reasonably foreseeable"). Courts in this Circuit have explicitly approved the recovery of incidental damages, such as the cost of destruction of the cargo and demurrage fees, in cases arising under the COGSA. See, e.g., Fortis Corporate Ins., S.A. v. M/V Cielo Del Canada, 320 F. Supp. 2d 95, 108 (S.D.N.Y. 2004). See also Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc., 10 Civ. 5070 (THK), 2011 WL 6288422, at *4 (S.D.N.Y. Dec. 15, 2011) (describing demurrage fees as an "implied" term in maritime contracts) (citing Safmarine v.

7

Columbia Container Lines (USA), Inc., 10 Civ. 1825 (KAM), 2010 WL 7134001, at *3 (E.D.N.Y. Dec. 15, 2010) ("The . . . obligation[] to remove the goods within a reasonable time and not to appropriate the space needed by the ship company for other cargo is . . . an implied term in the maritime contract and falls on the shipper or consignee.") (citations and quotation marks omitted)).

The bills of lading unambiguously stated that MSL would be liable for the cost of the transport, as well as any fees incurred in connection to the transport and attorneys' fees and costs. Because Atlantic became the assignee on the contract and incurred reasonably foreseeable expenses in connection to the storage and disposal of the cargo, this Court agrees that the damages owed to Atlantic include the freight costs, incidental damages, and the attorneys' fees and costs.

**A. Principal Amount**

Atlantic alleges that the principal amount owed is $158,300.50. This is the sum of the freight charges, demurrage, port storage, destruction costs, and documentation fees.

Atlantic has provided seven invoices that reflect the total charges associated with the shipment, including ocean freight charges, demurrage, detention, and booking fees. (Pergher Aff. at Ex. A.) The invoices are dated September 14, 2011, October 5, 2011, October 19, 2011, and November 9, 2011 and total $51,677.00.[1]

Email correspondence between representatives of Atlantic and MSL reflect additional charges adding to the principal amount. (Pergher Aff. at Ex. C.) A table contained in these emails shows that the demurrage costs associated with this shipment extended through July 26, 2012

---

[1] The Court notes that, in an email correspondence between representatives from Atlantic and MSL, an additional charge of $3,150.00 is listed in connection with the September 14, 2011 shipment. The Court does not include this in its calculation because there is no invoice included and, in any event, the representatives mutually agreed to waive this charge. (Pergher Aff. Ex. C.)

and totaled $42,070.50; an accompanying email reflects that Atlantic agreed to reduce this amount to $14,023.50. (Id.) Atlantic represents that storage costs were $26,000, destruction costs were $63,000, and terminal handling charges and documentation fees were $3,600. Atlantic waived a miscellaneous charge of $3,000. Thus, the additional charges total $106,623.50.

Although there are no invoices that confirm these charges, an Atlantic representative sent this list of charges, along with a payment schedule, to MSL. In response, a representative from MSL replied, "Please confirm that I am in agreement with your proposal." (Id.)  An email acknowledging liability is a "more than adequate" basis on which to determine damages. O.T.S. Logistics, Inc. v. Maestri Pastai, Inc., 09 Civ.1406 (NGG)(CLP), 2010 WL 772745, at *3 n.3 (E.D.N.Y. Mar. 4, 2010). Atlantic also provided sworn statements from a senior official at Atlantic confirming this amount. The Court therefore has sufficient assurance of these charges.

As a final point, Atlantic provided email correspondence between representatives of Atlantic and CMA CGM, the company retained to destroy the cargo, that reflect that the companies agreed upon a "lumpsum compensation of USD 80'000" to CMA CGM. (Pergher Aff. Ex. B.) The Court presumes from the documents that this represents a reduction of the destruction costs ($63,000.00) and storage costs at two ports ($7,000.00 and $17,000.00). This reduction could, in turn, reduce the amount owed to Atlantic: correspondence with MSL shows that Atlantic charged MSL $89,000.00 for storage and destruction of the cargo. But the emails between Atlantic and CMA CGM also indicate that an unspecified amount of "additional costs (penalties, etc.)" would be added to the lumpsum, and the parties have not provided confirmation of this additional cost. And the damage amount provided by Atlantic to MSL of $89,000 was agreed upon by the MSL representative. (Pergher Aff. Ex. C.) Therefore, this Court views the Atlantic-CMA CGM correspondence to be significant for its confirmation that storage and

destruction costs were actually paid by Atlantic to CMA CGM, rather than as evidence of the exact costs.

Accordingly, because Atlantic has provided invoices, affidavits, and emails to support its claim of the principal amount, the Court finds that Atlantic's principal damages amount to $158,300.50.

### B. Attorneys' Fees and Costs

Atlantic asserts that it is entitled to attorneys' fees of $5,929.50 and costs in the amount of $462.70. (Pl. Aff. ¶ 21; Nast. Aff.)

The "Conditions" attached to the bills of lading, the rights to which Atlantic was assigned, unambiguously provide that MSL is required to pay "attorney's fees and expenses incurred in collecting amounts due from Shipper." (Compl. at Ex. 1.) Courts have awarded attorneys' fees on similar clauses. See, e.g., Maersk Inc. v. Alan Mktg., Inc., 97 Civ. 3495 (HB), 1998 WL 167323, at *3 (S.D.N.Y. Apr. 10, 1998) (awarding attorneys' fees due to express clause in bill of lading). In addition to hourly rates, "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).

In support of its claim for attorneys' fees, Atlantic has submitted a sworn affidavit from Atlantic's counsel and a table of the hours required to draft and serve the complaint, draft and file the motion for default judgment, and draft and file the Proposed Findings of Fact and Conclusions of Law. (Nast. Aff. at Ex. A.) These time logs reflect an appropriate number of hours worked and a reasonable hourly rate that totals $5,929.50. The affidavit also indicates that counsel spent $112.00 in photocopies, travel expenses, and service fees. (Nast Aff. ¶ 3.) Finally, counsel provides a receipt for the $350.00 required for filing the Complaint in this Court. (Nast.

Aff. ¶ 4, Ex. B.) These are costs are recoverable. See Greathouse v. JHS Sec., Inc., 11 Civ. 7845 (PAE)(GWG), 2012 WL 3871523, at *12 (S.D.N.Y. Sept. 7, 2012) report and rec. adopted as modified, 11 Civ. 7845 (PAE)(GWG), 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012).

The Court finds that, pursuant to the bill of lading, Atlantic is entitled to reasonable attorneys' fees and costs in the amount of $6,392.20.

### III.     Pre-Judgment and Post-Judgment Interest

Atlantic claims pre-judgment and post-judgment interest. Regarding the rate and commencement of accrual, Atlantic suggests that the Court apply the Federal Prime Rate of 3.25% commencing on October 27, 2011, the date on which MSL failed to pay the September 27, 2011 freight invoice. (Pl. Aff. ¶¶ 33, 34.).

In admiralty cases, "prejudgment interest should be granted in the absence of exceptional circumstances." Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293, 310 (2d Cir. 1987) (quoting Mitsui & Co. v. American Export Lines, 636 F.2d 807, 823 (2d Cir. 1981)). The appropriate interest rate and commencement date are within the broad discretion of the district court. See N.Y. Marine & Gen. Ins. Co. v. Tradeline (LLC), 266 F.3d 112, 131 (2d Cir. 2001) (citations and quotation marks omitted); Independent Bulk Transport, Inc. v. Vessel Morania Abaco, 676 F.2d 23, 25 (2d Cir. 1982) ("Although it is an abuse of discretion to deny prejudgment interest in admiralty cases except under extraordinary circumstances, . . . the district court has broader discretion to determine when interest commences and what rate of interest to apply.") (citations omitted); Hollie v. Korean Air Lines Co., Ltd., 834 F. Supp. 65, 69 (S.D.N.Y. 1993) (citing cases applying various interest rates). Interest is intended to make the injured party whole. Mitsui & Co., 636 F.2d at 824.

In this case, there are no extraordinary circumstances that warrant a denial of prejudgment interest and the Court accepts the Federal Prime Rate as the appropriate interest rate. But the Court disagrees with Atlantic's assertion that interest on the full principal amount should begin on October 27, 2011.

Interest should run on the date the loss took place. Man Ferrostaal, Inc. v. M/V Akili, 763 F. Supp. 2d 599, 614 (S.D.N.Y. 2011). Accordingly, the prejudgment interest should commence when MSL breached each of the four invoices. Atlantic provides that breach of the first invoice occurred on October 27, 2011. There were three other bills of lading issued on October 5, 2011, October 19, 2011, and November 9, 2011. The documents show that invoices for these shipments were issued on October 25, 2011 ($8,228.00), November 15, 2011 ($18,513.00), December 10, 2011 ($6,171.00), and January 2, 2012 ($1,015.00). Therefore, pre-judgment interest relating to these amounts should begin on the date these invoices became due. Similarly, the prejudgment interest applied to the incurred fees—storage, demurrage, destruction—should be calculated from the date Atlantic was forced to incur this loss.

Atlantic is also entitled to post-judgment interest, and the statutory amount shall apply. 28 U.S.C § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

## CONCLUSION

Based on the evidence presented and applicable case law, this Court recommends that Atlantic be awarded $158,300.50 in damages, $6,392.20 in attorneys' fees and costs, and pre-judgment and post-judgment interest calculated according to the foregoing guidelines.

\*   \*   \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Oetken. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

New York, New York
August 16, 2013